IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

| | |
|---|---|
| GARY JAMES THAUT, ) | Cause No. CV 05-34-H-DWM-CSO |
| ) | |
| Plaintiff, ) | |
| ) | FINDINGS AND RECOMMENDATION |
| vs. ) | OF UNITED STATES MAGISTRATE |
| ) | JUDGE TO DISMISS PORTIONS OF |
| BILL SLAUGHTER; MIKE MAHONEY; ) | PLAINTIFF'S COMPLAINT |
| DAN CHLADEK; LAURIE DANIELS; ) | |
| CANDYCE NEUBAUER; KEN ) | |
| NEUBAUER; OFFICER BRUNO KRAUS,) | |
| ROXANNE WIGERT and BLAIR ) | |
| HOPKINS, ) | |
| Defendants. ) | |

Plaintiff is a prisoner proceeding pro se who has filed a Complaint and two amendments pursuant to 42 U.S.C. § 1983. (See Court's Doc. Nos. 1, 8 and 11).

Pursuant to the federal statutes governing proceedings in forma pauperis and proceedings by prisoners, federal courts must engage in a preliminary screening of cases to assess the merits of the claims. 28 U.S.C. §§ 1915(e)(2), 1915A(a); 42 U.S.C. § 1997e(c)(1); Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc). The court must identify cognizable claims, or dismiss the complaint, or any portion of the complaint, if the complaint is frivolous, malicious, or fails to state a claim upon which

FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO
DISMISS PORTIONS OF PLAINTIFF'S COMPLAINT   / PAGE 1

relief can be granted, or if the complaint seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A(b); 42 U.S.C. § 1997e(c)(1).

### A. Parties

Plaintiff Gary Thaut is a *pro se* prisoner incarcerated at the Montana State Prison. The Defendants named in Plaintiff's original complaint are Bill Slaughter, former director of the Montana Department of Corrections; Mike Mahoney, Warden of Montana State Prison; Dan Chladek, Max. Unit Manager; Laurie Daniels, Kitchen Supervisor; Candyce Neubauer, Classification Disciplinary Grievance Bureau Chief; Ken Neubauer, "D" Unit Manager; and Officer Bruno Kraus. (Court's Doc. No. 1). Since the filing of his original complaint, Plaintiff has filed two amendments naming Roxanne Wigert, the Close II case manager, and Blair Hopkins, the treatment director at Montana State Prison.

### B. Allegations

Plaintiff's allegations are set forth in detail in this Court's Order of January 19, 2006. (Court's Doc. No. 7). In that Order, the Court required Plaintiff to respond to a number of questions regarding his claims. Plaintiff has now complied. In addition, he has added two new defendants alleging that they too are involved in the "discrimination and retaliation" regarding the classification of Plaintiff within the prison. (Court's Doc. Nos. 8 and 11).

**C.  Analysis**

The Court will consider Plaintiff's claims in the following four categories: (1) claims regarding improper classification, discrimination and retaliation; (2) claims regarding being placed in the hole; (3) claims regarding the strip search; and (4) claims regarding the theft of food and property at the prison and the treatment of women, children, Native Americans, animals and other inmates at MSP.

    1.   <u>Improper Classification, Discrimination and Retaliation</u>

Plaintiff argues that he was improperly classified upon entering MSP in September 2000 through apparently March 2003 when he was placed on the low side of the prison.  Plaintiff contends the reasons for this wrongful classification include discrimination because of minor mental health issues and retaliation.

Prisoners have no protected liberty interest in their classification status, including choice of housing.  <u>Pratt v. Rowland</u>, 65 F.3d 802, 806 (9th Cir. 1995).  It would not be a violation of an inmate's constitutional rights if prison officials made classification decisions, including placement in temporary lock-up, based upon "minor mental health issues." Prisons must be given leeway in the day-to-day decisions regarding the placement of inmates.  Mental health issues will

play a role in this determination and it is proper to consider such issues. Prison officials "should be accorded wide-ranging deference in the adoption of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." Bell v. Wolfish, 441 U.S. 520, 540, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). A security classification system which considers mental health issues is "reasonably related" to legitimate penological interests, and is therefore, constitutional. See Turner v. Safley, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Accordingly, to the extent that Plaintiff has raised any due process claims regarding his classifications while incarcerated at the Montana State Prison, those claims will be recommended for dismissal.

Similarly, Plaintiff's allegations that Defendant Chladek refused to allow him to work "outside of single/fence" because another inmate escaped more than a year ago should be dismissed. Plaintiff does not have a liberty interest in his classification and Defendant Chladek could appropriately consider the fact that another inmate escaped in making a decision about allowing Plaintiff to work "outside" as a result of the escape. (Court's Doc. No. 1-Compl. Supp. at 23-25). See Turner, 482 U.S. at 89.

The Court turns next to Plaintiff's allegations regarding retaliation. "A prisoner suing prison officials under section 1983 for retaliation must allege that he was retaliated against

FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO
DISMISS PORTIONS OF PLAINTIFF'S COMPLAINT  / PAGE 4

for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline." <u>Barnett v. Centoni</u>, 31 F.3d at 816 (citing <u>Rizzo v. Dawson</u>, 778 F.2d 527, 532 (9th Cir. 1985)).

Plaintiff first contends he was classified to a higher security unit within the prison in retaliation for his letter writing campaign. Specifically, he alleges that although he had a point total low enough to be classified on the low side, Defendant Ken Neubauer retaliated against him for writing "hundreds of letters" of complaint "to people all over the United States about problems at MSP/DOC," (Court's Doc. No. 1-Compl. Supp. at 4, referring to the Department of Corrections). He seems to allege that Defendants Candyce Neubauer and Roxanne Wigert authorized this retaliation by denying Plaintiff's appeals of the issue. (See Court's Doc. No. 1, pp. 26-31 and Doc. No. 8).

There is generally no due process protection for inmates in the classification process. <u>See</u> <u>Sandin v. Conner</u>, 515 U.S. 472, 485, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). However, a claim of retaliation survives <u>Sandin</u>, because it raises constitutional questions beyond due process concerns. Specifically, claims of retaliation for the exercise of a prisoner's First Amendment rights survives <u>Sandin</u>. <u>Pratt</u>, 65 F.3d at 807; <u>Hines v. Gomez</u>, 108 F.3d 265, 269 (9th Cir. 1997). Therefore, the Court does not

FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO DISMISS PORTIONS OF PLAINTIFF'S COMPLAINT   / PAGE 5

recommend its dismissal at this time.

Plaintiff next alleges that he was retaliated against for complaining about the strip search incident.  Specifically, he contends that Defendant Kraus retaliated against him by refusing to allow Thaut to enter the kitchen supervisor's office to clean it.  Thaut asserts that, when he asked Kraus why Kraus wasn't permitting him to do his job, he was sent back to his unit, handcuffed, and placed in temporary lockdown for several days.  Thaut received a "severe" write-up, lost his clear conduct, and had to quit his job.  (Court's Doc. No. 1-Compl. Supp. at 12-14).  Thaut also asserts that Kraus retaliated by calling him "a rat & snitch" "openly for all to hear."  (Id. at 16).

Similarly, Thaut complains that his supervisor in the kitchen, Defendant Daniels, retaliated against him for filing a complaint about her failure to get inmates to work on time by removing him from his job on July 29, 2004.  (Id. at 21-22).

As with Plaintiff's classification retaliation claim, the Court has serious doubts about the merits of these claims but it cannot say that they are entirely without merit.  Therefore, the Court will not recommend the dismissal of these claims at this time.

### 2. The Hole

Plaintiff has next raised concerns in his complaint regarding being placed in "the hole" for 27 days.  Plaintiff

contends that while he was in the "hole" he was not permitted to leave his cell four days out of the week.  The other three days of the week he was let out of his cell for 10-15 minutes for a shower.  He alleges he was not allowed any exercise.  His meals were brought to his cell and he was allowed a Bible, a toothbrush, toothpaste, soap, shampoo, clothes, two blankets and writing materials.  He contends however, that the cells were very cold and he was not allowed his long underwear or extra blankets. (Court's Doc. No. 9, pp. 4-5).

The Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty upon prison officials to ensure that inmates receive adequate food, clothing, shelter, and medical care.  See Farmer v. Brennan, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); Keenan v. Hall, 83 F.3d 1083, 1089 (9th Cir. 1996); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982). "Exercise has been determined to be one of the basic human necessities protected by the Eighth Amendment," LeMaire v. Maass, 12 F.3d 1444, 1457 (9th Cir. 1993), and the long-term deprivation of outdoor exercise for inmates is unconstitutional.  See Id. at 1458; Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979) (denial of outdoor exercise for over four years constituted cruel and unusual punishment); Toussaint v. Yockey, 722 F.2d 1490, 1493 (9th Cir. 1984) (holding that the district court did not err in concluding that the denial of outdoor exercise to inmates

FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO DISMISS PORTIONS OF PLAINTIFF'S COMPLAINT  / PAGE 7

assigned to administrative segregation for over one year raised "substantial constitutional question").

In the cases cited above, the Ninth Circuit Court of Appeals has found it important that the inmates who were denied exercise were not temporarily segregated.  A deciding factor in these opinions is clearly the amount of time an inmate is subjected to such conditions.  Here, Plaintiff was placed in temporary lock-down.  This Court cannot say that being confined for 28 days without outdoor exercise constitutes a constitutional violation.  Accordingly, this claim should be dismissed.

The Eighth Amendment also guarantees adequate heating. <u>Gillespie v. Civiletti</u>, 629 F.2d 637, 642 (9th Cir. 1980). However, Plaintiff admits that he was given clothing and two blankets while in lock-down.  The fact that Plaintiff was denied a third blanket is insufficient to state a constitutional violation.

    3.  <u>Strip Search</u>

Thaut avers that Defendant Kraus strip-searched many kitchen workers in the middle of the high-side dining room, "right out in front of all kitchen staff and many guards." (Court's Doc. No. 9, p. 11).  The Fourth Amendment guarantees "[t]he right of the people to be secure . . . against unreasonable searches and seizures."  This right extends to incarcerated prisoners; however, the reasonableness of a particular search is determined

FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO DISMISS PORTIONS OF PLAINTIFF'S COMPLAINT   / PAGE 8

by reference to the prison context.  In Bell v. Wolfish, 441 U.S. 520, 558, 99 S.Ct. 1861, 1884, 60 L.Ed.2d 447 (1979), the Supreme Court set forth a balancing test for determining a search's reasonableness:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application.  In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails.  Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

Id. at 559, 99 S.Ct. at 1884 (emphasis added).  While strip searches are permissible in a prison setting, they can be found to be unreasonable if excessive, vindictive, harassing, or unrelated to any legitimate penological interest.

Based upon Plaintiff's allegations regarding the manner in which the strip search apparently occurred, the Court will not recommend the dismissal of this claim at this time.

### 4. Remaining issues

Thaut has presented a number of claims for which he does not have standing.  Specifically he avers that employees at MSP eat more food than they are supposed to and so cheat taxpayers out of "thousands & thousands of dollars."  He also claims that many employees beat women and molest children.  (Court's Doc. No. 1-Compl. Supp. at 17-19).  He alleges that some defendants are biased "towards at least some Native Americans."  Id. at 23.

FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO DISMISS PORTIONS OF PLAINTIFF'S COMPLAINT  / PAGE 9

Thaut also complains that there is a disproportionate number of Native Americans at the prison.  Id. at 32.

In his second amendment to his Complaint, Thaut alleges that Defendant Blair Hopkins falsely stated that waiting lists for treatment groups are prioritized by the earliest potential release dates.  (Court's Doc. No. 11, p. 2).  Thaut contends this is untrue since he was scheduled for group when other people who were closer to potential release were kept out of group.  (Id. at p. 4).

Standing under Article III requires an injury that is "actual or imminent, not 'conjectural' or 'hypothetical.'"  Cole v. Oroville Union High Sch. Dist., 228 F.3d 1092 (9th Cir. 2000), quoting Whitmore v. Arkansas, 495 U.S. 149, 155 (1990).

> [A] plaintiff must show (1) [he] has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000).  Article III standing requires the plaintiff to establish standing for each challenge he wishes to bring and each form of relief he seeks.  See id.

Plaintiff cannot establish standing for these claims because he cannot show injury in fact.  He has made no allegation

FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO DISMISS PORTIONS OF PLAINTIFF'S COMPLAINT  / PAGE 10

regarding how the theft of food, how the misstatement regarding treatment groups and how the mistreatment of women, children, Native Americans and animals has caused him to suffer an injury in fact. Therefore, he has no standing to challenge these violations that he alleges are occurring.

### 5. Defendants Slaughter and Mahoney

Plaintiff asks that Defendants Slaughter and Mahoney both be held accountable for all the wrongful acts in his 36-page Complaint. (Court's Doc. No. 1, p. 4). However, merely acting as a supervisor, without a showing of direct involvement in the conduct complained of, is insufficient to confer liability under § 1983. Bonner v. Lewis, 857 F.2d 559, 565 (9th Cir. 1988).

Defendants Slaughter and Mahoney's potential supervisory liability cannot derive from the liability of others, as there is no *respondeat superior* theory in § 1983. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Supervisory liability is individual liability, and focuses on whether the action or inaction of the supervisor caused a civil rights violation to occur, and whether it was through the action of subordinates or directly through the supervisor's own conduct. Id. To impose liability on an individual supervisory defendant, a plaintiff must show an affirmative link or causal nexus between that defendant and the deprivation of rights of which plaintiff complains. Rizzo v. Goode, 423 U.S. 362, 377-80 (1976); Leer v.

Murphy, 844 F.2d 628, 634 (9th Cir. 1988); Harris v. City of Roseburg, 664 F.2d 1121, 1125 (9th Cir. 1981).

There is no allegation that an action or inaction of either Defendant Slaughter or Mahoney caused a civil rights violation to occur. Accordingly, these Defendants will be recommended for dismissal.

**D. Conclusion**

The Court has considered whether the Complaint is frivolous, malicious, fails to state a claim, or seeks solely monetary relief from a defendant who is immune. See 28 U.S.C. §§ 1915(e)(2), 1915A(b). It has also considered whether Plaintiff has a reasonable opportunity to prevail on the merits. See 42 U.S.C. § 1997e(g). After review, the Court concludes that dismissal is not appropriate at this time. With liberal construction the Court finds that the following allegations warrant a response from Defendants:

1. Plaintiff's allegation that he was improperly classified within the prison in retaliation for writing a number of letters complaining about the prison.

2. Plaintiff's allegation that he was retaliated against for complaining about the strip search.

3. Plaintiff's allegation that he lost his job for lodging a complaint against his supervisor.

4. Plaintiff's claim that he was strip searched in violation of the Fourth Amendment.

Accordingly, the Court, by separate Order, will require that the

Complaint be served on Defendants Laurie Daniels, Candyce Neubauer, Kenneth Neubauer, Roxanne Wigert and Bruno Kraus.

Based on the foregoing, the Court enters the following:

### RECOMMENDATION

1. All claims raised in Plaintiff's complaint and the amendments thereto should be dismissed **except**: (1) Plaintiff's allegation that he was improperly classified within the prison in retaliation for writing a number of letters complaining about the prison; (2) Plaintiff's allegation that he was retaliated against for complaining about the strip search; (3) Plaintiff's allegation that he lost his job for lodging a complaint against his supervisor; and (4) Plaintiff's claim that he was strip searched in violation of the Fourth Amendment.

2. Defendants Slaughter, Mahoney, Chladek and Hopkins should be dismissed.

### NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

The Clerk of Court shall serve a copy of this Findings and Recommendation of the United States Magistrate Judge upon Plaintiff. Plaintiff is advised that pursuant to 28 U.S.C. § 636(b)(1), he has the right to file written objections to this Findings and Recommendation. Any objections to the Findings and Recommendation must be filed with the Clerk of Court within twenty (20) days after the signing of this recommendation, or

objection is waived.

**PLAINTIFF IS CAUTIONED THAT HE MUST KEEP THE COURT ADVISED OF ANY CHANGE OF ADDRESS AND A FAILURE TO DO SO COULD RESULT IN A RECOMMENDATION OF DISMISSAL OF THIS CAUSE OF ACTION.**

DATED this 6th day of November, 2006.

/s/ Carolyn S. Ostby
Carolyn S. Ostby
United States Magistrate